IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **TAWANDA BRAXTON,**<br>Plaintiff,<br><br>v.<br><br>**TYSON FARMS, INC.**<br><br>SERVE:<br><br>Tyson Farms, Inc.<br>c/o CT Corporation System<br>4701 Cox Rd., Suite 285<br>Glen Allen, VA, 23060-6808<br><br>**and**<br><br>**TYSON FOODS, INC.,**<br><br>SERVE:<br><br>Tyson Foods, Inc.<br>c/o CT Corporation System<br>4701 Cox Rd., Suite 285<br>Glen Allen, VA, 23060-6808<br><br>Defendants. | Civil Action No. _____<br><br><br><br>**JURY TRIAL REQUESTED** |

## **COMPLAINT**

COMES NOW the Plaintiff, TAWANDA BRAXTON, by and through undersigned counsel, and moves this court for entry of judgment in her favor, and against the defendants

1

TYSON FARMS INC. and TYSON FOODS, INC. (hereinafter referred to individually and collectively as "TYSON") and in support of such motion, alleges and avers as follows:

## NATURE OF ACTION

1. Plaintiff TAWANDA BRAXTON brings this cause of action under 42 U.S.C. §2000(e) alleging violations of rights guaranteed under Title VII of the Civil Rights Act of 1964, as amended, based upon retaliation; under the Virginia Human Rights Act, as amended, as codified in Va. Code § 2.2-3901 *et seq.*; under Va. Code § 40.1-27.3, Virginia's whistle blower retaliation statute; and under Virginia common law for assault and battery.

## JURISDICTION AND VENUE

2. Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the unlawful employment practices alleged in this Complaint occurred in this District.

4. TYSON presently, and regularly, conducts business in Accomack County, Virginia.

5. TYSON is subject to personal jurisdiction of this Court pursuant to Va. Code §8.01-328.1(A)(1) & (6).

6. TYSON presently, and regularly, employees over 500 employees.

7. The unlawful employment practices committed by TYSON occurred in this judicial district, and Plaintiff would have retained her employment in this judicial district but for the unlawful practices of TYSON.

8. The Court has supplemental jurisdiction over Plaintiff's Virginia state and local law claims under 28. U.S.C. § 1391(b).

## PARTIES

9. The Plaintiff, TAWANDA BRAXTON, was at all times relevant a citizen and resident of Accomack County, Virginia.

10. Plaintiff was an employee of TYSON within the meaning of 42 U.S.C. §2000e(f) at all times relevant to this action

11. TYSON is an employer within the meaning of U.S.C. § 2000e(b) at all times relevant to this action.

12. TYSON is doing business in Accomack County, Virginia.

13. TYSON is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of the twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. §2000e(b).

## ADMINISTRATIVE HISTORY

14. On March 15, 2023, Plaintiff timely filed an administrative Charge of Discrimination simultaneously with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Attorney General's Office of Civil Rights, pursuant to those agencies' work-share agreement. The work-share agreement states, among other provisions, that a Charge of Discrimination filed with one agency is deemed to be filed with both agencies.

15. On March 27, 2023, the EEOC issued a Notice of Right to Sue. *See* **EXHIBIT A**. Plaintiff commences this action within 90 days of the receipt of the Notice of

Right to Sue and within one year of the accrual of her claims under the Virginia Human Rights Act and Va. Code § 40.1-27.3

## ALLEGATIONS

16. Plaintiff is a Black female who was hired by TYSON on or about October 24, 2005 to work in TYSON's poultry processing plant in Temperanceville, Virginia

17. Apryl Rogers was Plaintiff's immediate supervisor at all times relevant to this Complaint.

18. Over the past several years, Apryl Rogers has harassed Plaintiff as she performed her job duties.

19. On or about November 26, 2022, Rogers removed Plaintiff's subordinate team members from Plaintiff's processing line. When Plaintiff objected to Rogers's actions, Rogers began yelling at her on the production floor, in front of a plant full of employees, telling Plaintiff that if she didn't like what she (Rogers) was doing, then she could find another job.

20. In order to de-escalate the situation, Plaintiff began walking away and Rogers continued to yell at her and began following her in order to get into Plaintiff's face and continue yelling, creating an unsafe environment. Rogers then directed Plaintiff to come to her office. Plaintiff complied.

21. Once in the office, Rogers called Daniel Hudson, HR Manager, to report that Plaintiff had walked away from her. Plaintiff explained to Mr. Hudson that Rogers had been hostile and aggressive, and that she had no choice other than

to walk away from her to avoid an escalation of the conflict and preserve her safety.

22. After leaving work at the end of her shift that day, Plaintiff called the Tyson Employee Hotline to report Rogers's behavior. On November 30, 2022, Plaintiff reached out to Daniel Hudson to inquire about her complaint, who stated he would get back to her. Plaintiff did not hear from Mr. Hudson regarding this matter again.

23. During the week of December 26-30, 2022, Plaintiff was contacted by Carla Hinman of Human Resources, and Plaintiff provided a written statement regarding the November 26, 2022 incident, and alleged discrimination against her by Rogers, and voiced concerns for workplace safety, due to Rogers's behavior. Plaintiff received no further contact regarding her complaint whatsoever.

24. Upon information and belief, Rogers was called in to the Human Resources office between January 2 and January 7, 2023.

25. Thereafter, on January 7, 2023, Rogers called a meeting of the Deboning Department, of which Plaintiff was a part. At the end of the meeting, in response to an open invitation for further concerns or comments, Plaintiff voiced her concern about the fact that a fellow supervisor (a peer to Plaintiff) had moved several of Plaintiff's team members, leaving Plaintiff with a shortage on her line.

26. In response, Rogers, both of the parties' supervisor, stated that Plaintiff was "being petty."

27. Rogers then dismissed all of the meeting attendees, except Plaintiff. Rogers then informed Plaintiff that she was going to be put on a Performance Improvement Plan, "so get ready."

28. The two women then went Daniel Hudson's office, where Rogers wrote and presented Plaintiff with a Performance Improvement Plan, to which Plaintiff appealed to Mr. Hudson for a justification. He dismissed her, saying that he didn't have time to deal with her.

29. That same day, Plaintiff contacted the Tyson Employee Hotline to report the incident, alleging that there was retaliation and discrimination being employed against her, based on the January 7, 2023 events. She also reported that no action had been taken on her previous complaint.

30. On January 9, 2023, Plaintiff went to Daniel Hudson's office to discuss her concerns regarding the January 7, 2023 meeting. She, again, was told that he didn't have time and that he would get back with her.

31. On that same day, Plaintiff contacted Marcos Northway, the head of Human Resources, and asked to speak with him about her concerns. He told her that he did not have time to address her, but that he would get back to her.

32. Later that week, a second Performance Improvement Plan was issued against her by Apryl Rogers via Daniel Hudson, to which Plaintiff again objected expressed that Rogers was fabricating the allegations contained in the Performance Improvement Plan and retaliating against her for her previous complaints.

33. Because Mr. Northway had not gotten back to her, on or about January 16, 2023, Plaintiff approached him to express her concerns that Rogers was targeting her in retaliation for previous reports, including by fabricating allegations against her and putting her on Performance Improvement Plans that contained allegations from at least 6 months prior to the creation of the plan, which was against company policy.

34. Plaintiff had also asked Daniel Hudson and Marcos Northway to move her to another department.

35. From January 16, 2023-January 27, 2023, Plaintiff continued to reach out to Hudson and Northway to request follow-ups to her complaints. As was their pattern, they told Plaintiff that they would get back to her, and took no action.

36. On January 27, 2023, Rogers sent Plaintiff and other supervisors a text stating, "Hey, ladies, you guys did a a great job this week. I appreciate you all thanks for all you do," indicating that there were no issues with Plaintiff's work performance.

37. On February 23, 2023, Rogers called Plaintiff into her office to inform her that she was being terminated for poor job performance and asked Plaintiff whether she needed to collect any of her belongings before she left, to which Plaintiff, replied, "yes, my phone."

38. Plaintiff then walked to another part of the plant by herself to retrieve her cell phone. Once she retrieved it and proceeded to leave the plant, Rogers suddenly appeared behind her yelling at her to vacate the premises and following her.

39. Rogers then assaulted Plaintiff, grabbing her arms and yelling at her to get out. Plaintiff attempted to defend herself. During the attack, Plaintiff injured her head and buttocks.

40. Apryl Rogers continues to be employed by TYSON.

41. Upon information and belief, there had been numerous prior reports against Rogers for her hostile, aggressive, retaliatory, and violent behavior, and just as in Plaintiff's case, upper management has failed to discipline her, thereby sanctioning and approving her behavior and subjecting their employees to a hostile environment and unsafe conditions.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVL RIGHTS ACT OF 1964, AS AMENDED

42. Plaintiff incorporates as if fully restated all of the foregoing and subsequent paragraphs.

43. "To state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity…; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Beall v. Abbott Labs*., 130 F.3d 614, 619 (4th Cir.1997).

44. Plaintiff reported that she believed that she was the victim of discrimination by Rogers, as averred above.

45. Upon information and belief, Plaintiff was subjected to fabricated allegations leading to being placed on Performance Improvement Plans and ultimately

being terminated as a result of her reports of discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

46. In response, TYSON did not resolve Plaintiff's complaints, but rather subjected Plaintiff to continued and additional mistreatment for the purpose of punishing her for attempting to assert her civil rights.

47. TYSON aided and abetted their employees in carrying out discriminatory and retaliatory actions against Plaintiff that violated Title VII.

48. Plaintiff was terminated, while Rogers was retained, even after Rogers assaulted Plaintiff.

49. Plaintiff believes, and based thereon alleges, that in addition to the practices stated above, TYSON may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will week leave of Court to amend this Complaint in that regard.

50. As a direct and proximate result of TYSON's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation, and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial.

51. Plaintiff believes, and based thereon alleges, that TYSON's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled

to punitive or exemplary damages from TYSON in a sum according to proof at trial.

## COUNT II
## RETALIATION AND TERMINATION IN VIOLATION OF VA CODE § 40.1-27.3

52. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

53. Virginia Code § 40.1-27.3(A)(1) states that "employer shall not discharge, discipline, threaten, discriminate against, or penalize and employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law enforcement official[.]"

54. Plaintiff made reports of discrimination and retaliation—violation of federal and state law—against Apryl Rogers.

55. Plaintiff reported safety and health violations caused by Apryl Rogers's hostile and aggressive behaviors of following her and yelling at her, escalating a conflict and creating an unsafe environment in violation of Va. Code § 40.1-51.2:1.

56. TYSON failed to address Plaintiff's complaints, and instead, through and by Rogers and its Human Resources employees, employed further retaliatory acts against Plaintiff in response to said complaints, placing Plaintiff on Performance Improvement Plans and ultimately terminating her, due to her protected acts and in violation of Virginia Code § 40.1-27.3.

10

57. As a direct and proximate result of TYSON'S retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

58. Pursuant to Virginia Code § 40.1-27.3, Plaintiff is entitled to "(i) an injuction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

## COUNT III
## RETALIATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

59. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

60. Va. Code § 2.2-3905(B)(7) provides that it shall be unlawful for any employer to discriminate against any employee "because such individual has opposed any practice made an unlawful discriminatory practice by this chapter…"

61. Plaintiff made reports of discrimination to superiors, and was met with retaliatory conduct from TYSON, culminating in her termination.

62. As a direct and proximate result of TYSON'S actions, Plaintiff has suffered and will continue to suffer pecuniary loss, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

63. The above-described acts by TYSON and/or its agents constitute retaliation for reporting violations of the Virginia Human Rights Act, Va. Code Ann. § 2.2-3905(B)(7).

64. Plaintiff is entitled to compensatory damages, punitive damages, and attorney fees and costs in an amount to be proven at trial, a permanent or temporary injunction, temporary restraining order, and any other relief the court deems appropriate.

## COUNT IV
## ASSAULT AND BATTERY: *RESPONDEAT SUPERIOR*

65. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

66. Rogers purposely, knowingly, recklessly, and wrongfully assaulted and battered Plaintiff as alleged *supra*.

67. Rogers's assault was harmful and offensive to Plaintiff and placed her in reasonable apprehension of physical harm.

68. Rogers purposely, knowingly, recklessly, and wrongfully touched and battered Plaintiff as alleged herein, *supra*.

69. Plaintiff's assault and battery of Plaintiff were intentional and done in conscious disregard of Plaintiff's rights.

70. Rogers's conduct described herein was done with actual malice toward Plaintiff, and actually and proximately causing her damage and entitling her to an award of punitive damages.

71. Rogers's assault and battery of Plaintiff alleged herein were committed within her scope of employment for TYSON.

72. As previously alleged, TYSON was aware of Rogers's violent behavior, as upon information and belief, she had been involved in several physical altercations in the workplace prior to her attack on Plaintiff on February 23, 2023.

73. As a direct and proximate result of TYSON's conduct, Plaintiff has suffered, and will in the future suffer, great damages including physical injury; severe mental anguish, stress, embarrassment, humiliation, inconvenience, and pain and suffering, causing symptomatic reaction, including but not limited to: depression, nervousness, inability to sleep, severe and persistent nightmares, panic attacks, loss of self-esteem, and severe anxiety impacting Plaintiff's daily living activities; medical expenses; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF TAWANDA BRAXTON prays that this Court enter judgment in her favor, and against TYSON, in an amount no less than $5,000,000, which will compensate her for:

A. Violation of her rights under Title VII of the Civil Rights Act of 1964, the Virginia Human Rights Act, and Va. Code § 40.1-27.3 and for common law assault;

B. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; emotional distress, mental anguish and humiliation, past and future; and

C. Punitive damages to punish TYSON for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

Plaintiff further prays for:

A. Injunctive relief consisting of an order requiring TYSON to establish and maintain an anti-discrimination and anti-retaliation training program for supervisors, to be approved and an monitored by the United States Equal Employment Opportunity Commission;

B. Trial by jury on all issues so triable;

C. Attorney's fees;

D. Costs incurred in prosecuting this action and otherwise challenging TYSON's unlawful activities;

E. Pre-judgment and post-judgment interest;

F. Front pay and back pay; and

G. Any and all other relief to which she may be entitled.

Respectfully submitted,

 /s/ Stephen Teague_____
Stephen Teague, VSB # 81006
LAW OFFICE OF STEPHEN C. TEAGUE
P.O. Box 706
Newport News, VA 23607
Telephone: (757) 317-0716
Facsimile: (757) 215-2974
E-mail: stephen@teaguelawoffice.com
*Counsel for Plaintiff*

Dated: June 24, 2023